34 F.3d 714
 18 Employee Benefits Cas. 2137
 Donald E. CONLEY, Appellant,
v.
PITNEY BOWES, A Corporation; Pitney Bowes Long Term
Disability Plan; George B. Harvey, as Trustee of Pitney
Bowes Long Term Disability Plan; Carmine F. Adimando, as
Trustee of Pitney Bowes Long Term Disability Plan; Pitney
Bowes Group Life Insurance Plan; Pitney Bowes Retirement
Plan; Pitney Bowes Major Medical Expense Plan; Pitney
Bowes Dental Expense Plan; Michael Critelli, Appellees.
 No. 93-3957.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1994.
Decided Sept. 13, 1994.
 
 Sheldon Weinhaus, St. Louis, MO, argued, for appellant.
 Keith Rabenberg, St. Louis, MO, argued. (Clark Cole, on the brief), for appellees.
 Before MORRIS SHEPPARD ARNOLD, Circuit Judge, JOHN R. GIBSON, Senior Judge, and MELLOY,* District Judge.
 MORRIS SHEPPARD ARNOLD, Circuit Judge.
 
 
 1
 Donald E. Conley initiated this action in the Circuit Court of Butler County, Missouri, against his employer Pitney Bowes after he had been denied continued disability benefits for a claim arising from injuries suffered in an automobile accident. The company removed the case to the United States District Court for the Eastern District of Missouri because the suit related to benefits under the Employee Retirement Income Security Act, 29 U.S.C. Sec. 1001 et seq. (ERISA). The district court granted the defendants's motion for summary judgment, 839 F.Supp. 1364, and this appeal followed. At issue is whether a claimant must exhaust administrative procedures when, contrary to the requirements of his plan, the letter denying his benefits does not inform him of appeal procedures.
 
 I.
 
 2
 ERISA does not explicitly require exhaustion of administrative or plan remedies. The doctrine is, in this context, a creature either of contract or judicial invention. We have required exhaustion in ERISA cases only when it was required by the particular plan involved. See Anderson v. Alpha Portland Industries, Inc., 727 F.2d 177, 180 (8th Cir.1984), aff'd, 752 F.2d 1293 (8th Cir. en banc 1985); cf. Kennedy v. Empire Blue Cross and Blue Shield, 989 F.2d 588, 594 (2nd Cir.1993) ("exhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy."). We have declined to apply a broader, judicially-crafted exhaustion requirement in ERISA actions. See Anderson v. Alpha Portland Industries, Inc., 752 F.2d 1293 (8th Cir. en banc 1985) (exhaustion not required for retirees absent explicit plan language extending plan requirements to them). The appellant concedes that the plan which is the subject of the suit before us does contain, in fact, such a requirement.
 
 
 3
 The language of the plan requiring exhaustion is complimented, in this case, by language that requires that any notice of denial of benefits be accompanied by explicit instructions informing the plan participant of the procedures for appeal. Section 7.8(a) of the plan document requires that the plan administrator provide to "any person whose claim for benefits has been denied ... a written notification of the denial. The written notification shall include ... an explanation of the claim appeal procedure." This plan language comports with the requirements of 29 C.F.R. Sec. 2560.503-1(f)(4), which dictates that the "[c]ontent of notice ... to every claimant who is denied a claim for benefits ... set[ ] forth ... [a]ppropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review."
 
 
 4
 The present case, therefore, may be distilled to one of contract. Two terms of an ERISA plan are the focus of this dispute, namely, an exhaustion clause and a clause requiring notice of appeal procedures. In deciding whether Mr. Conley's action can survive a motion for summary judgment, "we must begin by examining the language of the plan document. Each provision should be read consistently with the others and the terms must be construed to render none of them nugatory." Jacobs v. Pickands Mather & Co., 933 F.2d 652, 657 (8th Cir.1991).
 
 II.
 A.
 
 5
 The terms that are at the center of this dispute are promises that were exchanged as part of a complex agreement. While pension and benefit plans are typically characterized as being unilateral contracts (agreements where an offer is accepted by a performance), the promises in the plan before us are more properly characterized as a bilateral contract (an agreement where promises of future performance are exchanged). See Arthur Linton Corbin, Corbin On Contracts Sec. 21 (one vol. ed. 1952). Accordingly, the part of the plan under consideration is subject to the federal common law of contracts. See Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987).
 
 
 6
 One well-established rule of contract construction is that "[i]n bilateral contracts for an agreed exchange of performances, ... where one party's performance is to be rendered prior in time to that of the other, it is a constructive condition precedent to the latter's duty." Lawrence P. Simpson, Handbook of the Law of Contracts Sec. 152 (1965). See also Restatement (Second) of Contracts Sec. 237 (1981) ("[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no material failure by the other party to render any such performance due at an earlier time."); E. Allan Farnsworth, Contracts Sec. 8.2(B) (2d ed. 1990); John D. Calamari and Joseph M. Perillo, The Law of Contracts Sec. 11-8 (1987); Corbin On Contracts Sec. 657. Such a "performance is as much a condition precedent to the other's duty as though expressly made so." Simpson, Sec. 152; See also, Loud v. Pomona Land & Water Co., 153 U.S. 564, 577, 14 S.Ct. 928, 932, 38 L.Ed. 822 (1894) (agreement to convey land "after the making of the payment and full performance" rendered such payment and performance a condition precedent to the duty to convey. (emphasis in original)). Furthermore, "[w]here the consideration given by each party to a contract consists in whole or in part of promises, all the performances to be rendered by each party taken collectively are treated as performances to be exchanged under an exchange of promises, unless a contrary intention is clearly manifested." Restatement (Second) of Contracts Sec. 232.
 
 
 7
 Application of these principles to the case at hand is straightforward. Because appellees were obligated to inform appellant of the appeal procedure at the time they denied him benefits, appellees performance had necessarily to precede exhaustion by the plaintiff. A defense under the exhaustion clause, therefore, may not be asserted absent performance of the notice clause, since they are presumed to be the subject of promises made in exchange for each other.
 
 B.
 
 8
 The defendants-appellants maintain that failure to impose the exhaustion requirement would be contrary to the public policy behind such a requirement. We disagree. Exhaustion is a very important concept in our jurisprudence, with deep roots in the principles of federalism and comity. See, e.g., Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). Among its several purposes in ERISA plans are:
 
 
 9
 (1) To reduce the number of frivolous law suits;
 
 
 10
 (2) To promote the consistent treatment of claimants;
 
 
 11
 (3) To provide a non-adversarial method of claims settlement;
 
 
 12
 (4) To minimize the cost of claims settlement for all concerned;
 
 
 13
 (5) To enhance the ability of trustees of benefit plans to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes;
 
 
 14
 (6) To enhance the ability of trustees of benefit plans to correct their errors, [or convince a disappointed claimant that he is incorrect];
 
 
 15
 (7) To enhance the ability of trustees to interpret plan provisions; and
 
 
 16
 (8) To help assemble a factual record which will assist a court in reviewing the fiduciaries actions.
 
 
 17
 Costantino v. TRW, Inc., 13 F.3d 969, 975 (6th Cir.1994). We recognize that judicially-created exhaustion requirements also may further these goals. We believe, however, that the freedom of contract between autonomous parties is a more important principle than even the very important judicially-created doctrine of exhaustion. Furthermore, where exhaustion is a bargained-for term of a contract, freedom of contract is not necessarily inconsistent with the principles underlying exhaustion requirements.
 
 
 18
 Requiring plan administrators to provide notice of appeals procedure as required by contract and the Secretary's regulations is not inconsistent with the goals that exhaustion typically furthers. Indeed, such a requirement serves much the same purpose as the exhaustion clause, namely, to avert resort to federal litigation where an administrative procedure is available. In fact, inclusion of such a term serves to avoid not only frivolous suits, but mistakenly filed suits as well. To advance the purposes of the Act, the Secretary's regulations, the contract, and the principles underlying the exhaustion and notice terms, we must construe and enforce the whole contract, including the notice of appeals procedure requirement.
 
 III.
 
 19
 In their motion for summary judgment and their supporting memorandum, the defendants-appellees rely expressly and exclusively upon Mr. Conley's failure to exhaust the plan's procedures. They do not allege that Mr. Conley had actual knowledge of the plan's procedures, thereby making any breach of the plan's notice requirements immaterial. The district court appears to have felt that the plaintiff-appellant's possession of the summary plan description gave him constructive knowledge of the appeals procedures. The terms of the plan and the requirements of the regulation, however, confer upon a claimant a right to more than just a copy of the summary plan description. He had a contractual right to information on the appeals procedure included with his notice of denial of benefits. On summary judgment, the movant is not entitled to the benefit of a legal rule that the summary plan description gave claimant constructive knowledge of the appeals procedures.
 
 
 20
 On appeal, the defendants-appellees further assert that Mr. Conley did not deny having actual knowledge of the plan's procedures. This argument, however, puts the cart before the horse. The defendants-appellees never alleged, either in their answer, their motion for summary judgment, or their memorandum in support of their motion, that Mr. Conley or his attorney had actual knowledge of the plan's appeals process. We do not think that Mr. Conley could be expected to deny something of which he had not been accused.
 
 IV.
 
 21
 Mr. Conley has also made claims under ERISA Sec. 510 for wrongful discharge, and under ERISA Sec. 409 for breach of fiduciary duty. He challenges the entry of summary judgment on these claims because, unlike claims for benefits, they are not within the purview of the plan's administrators and therefore not subject to the plan's exhaustion requirement. The defendant-appellees response to this argument is that it was waived because it was not presented to the district court for consideration upon the defendants-appellees motion for summary judgment.
 
 
 22
 The district court entered summary judgment on these claims without having been asked to. The motion for summary judgment does not refer specifically to the Sec. 510 and Sec. 409 counts. Therefore, the plaintiff was never placed on notice that he needed to argue that no exhaustion requirement existed for these two counts. Since he could not have known that the motion for summary judgment included the Sec. 510 and Sec. 409 counts, these claims must also be reinstated.
 
 V.
 
 23
 For the foregoing reasons, we reverse the judgment of the district court, and remand for proceedings consistent with this opinion.
 
 
 24
 JOHN R. GIBSON, Senior Circuit Judge, dissenting.
 
 
 25
 I respectfully dissent.
 
 
 26
 I would affirm the judgment of the district court for the reasons articulated in its decision.
 
 
 27
 Conley's testimony is very clear that after he received the letter denying benefits he turned it over to his lawyer. He felt that he should be getting a pension, disability or something, so retained the lawyer to look after his interests. He let the lawyer handle it and do the work. In addition to the letter, he gave a copy of the benefit plans book to the lawyer. The booklet set forth in clear detail the claim appeal procedure.
 
 
 28
 The court today elevates form over substance and ignores the factual situation before the district court and on which it ruled. This is not a case where an employee failed to file an application for review because he was not told of the procedures, but rather one where the employee relied on his lawyer, who dropped the ball.
 
 
 
 *
 The Honorable Michael J. Melloy, Chief United States District Judge for the Northern District of Iowa, sitting by designation