# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-1855
No. 96-2203

_____

Robert Dodson,                          *
                                        *
            Appellee,                   *
                                        *     Appeals from the United States
      v.                                *     District Court for the
                                        *     Western District of Arkansas.
Woodmen of the World Life               *
Insurance Society,                      *
                                        *
            Appellant.                  *

_____

Submitted: December 13, 1996

Filed: March 20, 1997

_____

Before WOLLMAN and MURPHY, Circuit Judges, and TUNHEIM,[1] District
      Judge.

_____

WOLLMAN, Circuit Judge.

      Woodmen of the World Life Insurance Society (Woodmen) appeals from
the district court's[2] orders awarding Robert Dodson disability benefits and
attorney fees.  We affirm.

---

[1]The HONORABLE JOHN R. TUNHEIM, United States District Judge
for the District of Minnesota, sitting by designation.

[2]The Honorable Harry F. Barnes, United States District Judge
for the Western District of Arkansas.

Dodson was employed by Woodmen as a field representative for more than eighteen years.  Under his contract with Woodmen, Dodson was enrolled in a group disability insurance policy (the group policy).  In the summer of 1990, Dodson began suffering from various physical ailments, anxiety, and depression, and his work level progressively declined.  By letter dated August 24, 1990, Dodson's manager stated that although he "sympathize[d] with [Dodson's] health problems," Dodson would be terminated if his production did not "drastically improve[] immediately."  Although Dodson's activity increased slightly the following week, he did not work at all the first three weeks in September.  Dodson was terminated on September 20, 1990, and his coverage under the group policy ended on this date as well.

On February 15, 1993, Dodson filed a claim for disability under the group policy. Because the group policy provided that claims must be made within one year after the onset of disability, Woodmen denied Dodson's claim as untimely.

Dodson then filed this ERISA action, alleging that the group policy's summary plan description (SPD) was insufficient because it failed to disclose the time limit for filing and that the time limit was therefore not enforceable against him.  The district court agreed, found that Dodson was disabled before the termination of the group policy, and awarded Dodson benefits and attorney fees.

**II.**

Woodmen contends that the district court erred in finding that Dodson was disabled before the termination of the policy on

September 20, 1990.  We review the district court's factual determination of Dodson's disability status for clear error.  See Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co., 48 F.3d 365, 369 (8th Cir.), cert. denied, 116 S. Ct. 300 (1995).

As relevant, the group policy defines "disabled" as "not able to do substantially all the basic duties of the participant's regular work" and "not doing any work for wage or profit."  Woodmen argues that Dodson's allegedly disabling symptoms did not occur until after Dodson was terminated.  Relying on the testimony of Dodson's treating physician, Dr. Kendall, and on Dodson's weekly activity reports, the district court concluded that Dodson was unable to substantially perform the basic duties of his work and thus was disabled prior to his termination on September 20, 1990.

Dr. Kendall treated Dodson regularly between October of 1989 and September of 1990.  He testified that physical ailments caused Dodson to miss work in the summer of 1990, which in turn caused Dodson to experience stress and anxiety and to fear he would be terminated.  Dr. Kendall opined that these job-related factors, in addition to family problems, caused Dodson acute depression or anxiety that rendered him mentally disabled and completely unable to work as of September 7, 1990, thirteen days before his termination and before coverage under the group policy ended.[3]

The district court found that Dodson's weekly work activity reports, which showed declining activity in July and August of 1990

---

[3]Woodmen asserts that Dodson's alleged disability was related to his fear that he might be terminated, apparently implying that this fact would take his disability out of the scope of coverage. Under our reading of the policy, however, all that is required is a showing that Dodson was disabled prior to the termination of the policy, September 20, 1990, and that the source of stress causing Dodson's disability is irrelevant.

and virtually no activity the first three weeks of September, corroborated Dr. Kendall's testimony that Dodson was disabled before the termination of the policy. Woodmen asserts that this finding is erroneous and that the presence of some activity in July and August of 1990 shows that Dodson maintained his ability to perform work and was therefore not disabled. We agree with the district court, however, that Dodson's diminishing work activity level corroborates Dr. Kendall's testimony that Dodson was unable to perform substantially all the basic duties of his job before the termination of coverage on September 20, 1990.

Woodmen contends that the district court erred in discounting testimony of Woodmen's medical director that Dodson was not disabled when he was terminated. We have held that opinions of a reviewing physician in an ERISA case are entitled to less deference than those of a treating physician. See Donaho v. FMC Corp., 74 F.3d 894, 901 (8th Cir. 1996). Accordingly, the district court did not err in finding that the testimony of the medical director was entitled to less deference because he was an employee of Woodmen, had never personally examined Dodson, and had not actively practiced medicine since 1961. Based on Dr. Kendall's testimony and the documentary evidence, we cannot say that the district court's conclusion that Dodson was disabled before the termination of the policy is clearly erroneous.

### III.

Woodmen contends that the group policy's time limit for filing bars Dodson's claim for benefits. The omission from the SPD of information regarding the time limit for filing violated ERISA, for ERISA requires that SPDs contain information regarding "circumstances which may result in disqualification, ineligibility,

or denial or loss of benefits" and "the procedures to be followed in presenting claims for benefits under the plan."  29 U.S.C. § 1022(b). Woodmen concedes that the SPD did not contain information regarding the time limit for filing claims, but contends that because Dodson did not rely on the omitted information the time limit should not be waived as applied to him.

A showing of reliance or prejudice must be shown to entitle a claimant to relief based on a faulty SPD.  See Maxa v. John Alden Life Ins. Co., 972 F.2d 980, 984 (8th Cir. 1992); Anderson v. Alpha Portland Indus., Inc., 836 F.2d 1512, 1520 (8th Cir. 1988).  The facts in this case show that Dodson was prejudiced by the omission of the time limit for filing from the SPD.  He was disabled in September of 1990 and had one year under the policy to file for benefits.  He became aware of the group policy in June of 1991 and thus had three months -- until September of 1991 -- in which he could have timely filed had he known of the time limit.  The SPD was the only document describing the group policy that Dodson had ever received.  Dodson testified that he read the SPD in June of 1991 but could not "get anything out of" it and that "there was . . . no evidence of any deadlines or claims to be filed or anything like that."  Had the SPD informed Dodson that the period for claiming benefits would expire in September of 1991, he would have had the opportunity to timely file or otherwise preserve his benefits.  Cf. Branch v. G. Bernd Co., 955 F.2d 1574, 1579 n.2 (11th Cir. 1992) (evidence that beneficiary received and read summary and failed to take timely action based on belief there was no time limit would support beneficiary's claim for relief based on faulty summary).

We reject Woodmen's contention that the time limit applied to bar Dodson's claim because Dodson is an "expert" and should have known of the allegedly standard year-long filing period.  ERISA requires that SPDs be "underst[andable] by the average Plan participant, and . . . sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."  29 U.S.C. § 1022(a)(1).  There is no provision excluding insurance salesmen from the purview of ERISA protection.  Moreover, Dodson sold life insurance, not disability insurance, and we will not assume that he possessed special familiarity with standard characteristics of disability policies.  Absent evidence showing that Dodson actually knew of the time limit in the group policy, he should not be barred from coverage in the circumstances of this case.

**IV.**

Finally, Woodmen argues that the district court erred in awarding Dodson attorney fees, a decision we review for an abuse of discretion.  See Maune v. International Bhd. of Elec. Workers, 83 F.3d 959, 963 (8th Cir. 1996).  In determining whether to award attorney fees, a court should consider the opposing party's culpability or bad faith, its ability to pay, the deterrent effect an award would have on others, whether the party requesting attorney fees sought to benefit all participants and beneficiaries or to resolve a significant ERISA legal question, and the relative merits of the parties' positions.  See Lawrence v. Westerhaus, 749 F.2d 494, 495-96 (8th Cir. 1984) (per curiam); Maune, 83 F.3d at 963.  The district court carefully weighed these factors and found that they supported an award of fees.  We find no abuse of discretion in this ruling.

The judgment is affirmed.

A true copy.

     Attest:

          CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.