**Linda A. CORSINI and Alan Cantara,
on behalf of themselves and all
persons similarly situated**

v.

**UNITED HEALTHCARE CORPORA-
TION, a Minnesota for–profit corpora-
tion and its affiliate, United Health
Plans of New England, Inc., a Rhode
Island health maintenance corporation.**

Civil Action No.–96–608–T.

United States District Court,
D. Rhode Island.

June 2, 1997.

Amato A. DeLuca, DeLuca & Weizenbaum, Ltd., Providence, RI, Peter N. Wasylyk, Providence, RI, Wood Robertson Foster, Jr., Jordan Matthew Lewis, Siegel, Brill, Greupner & Duffy, Minneapolis, MN, for Plaintiffs.

Jeffrey C. Schreck, Brown, Rudnick, Freed & Gesmer, Providence, RI, Lewis A. Remele, Jr., Kevin Patrick Hickey, Brassford, Lockhart, Truesdell & Briggs, Minneapolis, MN, for Defendants.

### Memorandum and Order

TORRES, District Judge.

### Introduction

This is an action brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.,* against United Health Plans of New England (UHPNE), a health maintenance organization (HMO) and its parent, United Healthcare Corporation (UHC). The plaintiffs sub-

scribe to a health care plan administered by one or both of the defendants (the Plan) and the plaintiffs purport to sue on their own behalf and on behalf of other subscribers to similar plans managed by the defendants.[1] The complaint alleges that the defendants have violated their obligations under both the Plan and ERISA by calculating the plaintiffs' co-payment obligations for medical services without taking into account undisclosed discounts negotiated by the defendants with health care providers.

The case is presently before the Court for consideration of the defendants' motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. More specifically, the defendants contend that the plaintiffs have failed to exhaust their administrative remedies under the Plan. In addition, UHC argues that it is not the Plan administrator and, therefore, there is no actual case or controversy between it and the plaintiffs.

Because I find that the plaintiffs are required to pursue administrative remedies provided by the Plan with respect to one of their claims but not the other; and, because I further find that the plaintiffs should be afforded the opportunity for limited discovery for the purpose of determining whether UHC plays a role in administering the Plan, the motion to dismiss on exhaustion grounds is granted, in part, and denied, in part, and the motion to dismiss for lack of an actual case or controversy is denied without prejudice to being renewed when such discovery has been completed.

### Background

The amended complaint alleges that UHC owns, operates and provides administrative services to HMOs and that UHPNE of Rhode Island, is a wholly owned subsidiary of UHC. Although the complaint is unclear, it appears that the named plaintiffs subscribe to the Plan which was established pursuant to a contract to which UHPNE is a party. UHC is joined as a defendant based on allegations that it is a plan fiduciary within the meaning of ERISA because it performs a variety of administrative and discretionary functions for UHPNE.

The Plan contains a co-payment provision that requires each subscriber to pay 20% of the "average and prevailing" charges for health care services rendered to that subscriber. Under the Plan "average and prevailing" charges may "... not exceed the fees that the provider would charge any other payor for the same services." The gist of the plaintiffs' claim (the "co-payment claim") is that, unknown to subscribers, the defendants negotiated with health care providers-for charges substantially less than the "average and prevailing" charges; but, that the defendants calculated subscribers' co-payment obligations to be 20% of the "average and prevailing" charge rather than 20% of the discounted charge.

In addition, the plaintiffs claim (the "reimbursement claim") that, although the Plan entitles them to reimbursement for co-payments that exceed 200% of their annual premiums, it is difficult, if not impossible, for subscribers to make the necessary calculations because they do not have ready access to the relevant data inasmuch as premiums are paid, in whole or in part, by their employers.

Based on those allegations, the plaintiffs contend that the Plan is being administered in a manner that violates ERISA and the defendants' fiduciary obligations under ERISA.

### Discussion

The defendants have moved to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction. Both defendants argue that the plaintiffs have failed to exhaust their administrative remedies under the Plan and UHC argues, in addition, that there is no case or controversy between it and the plaintiffs because UHC is neither an administrator nor a fiduciary of the Plan.

---

1. The parties have agreed that the Court should consider the motion to dismiss before it considers the plaintiffs' motion to certify this suit as a class action.

## I. Exhaustion

A plaintiff's failure to exhaust administrative remedies, when exhaustion is required, has been held to deprive a federal court of subject matter jurisdiction.[2] 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 195 (2d ed.1990); *Ritza v. International Longshoremen's and Warehousemen's Union,* 837 F.2d 365, 368–69 (9th Cir.1988). In this case, in order to determine whether the plaintiffs have failed to satisfy the exhaustion requirement, the terms of both the ERISA statute and the Plan must be examined.

ERISA, itself, does not contain any express requirement that a plaintiff exhaust the administrative remedies set forth in a health care plan before bringing suit. *Drinkwater v. Metropolitan Life Insurance Co.,* 846 F.2d 821, 825 (1st Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). However, ERISA does require such plans to afford subscribers a reasonable opportunity to obtain review, by a plan fiduciary, of decisions denying claims for benefits. 29 U.S.C. § 1133(2). Exhaustion of those review procedures is a pre-condition to commencing suit based upon a denial of benefits because "[i]t would be 'anomalous' if the same reasons which led Congress to require plans to provide remedies for ERISA claimants did not lead courts to see that those remedies are regularly utilized." *Makar v. Health Care Corp.,* 872 F.2d 80, 83 (4th Cir.1989) (citations omitted); *see also Conley v. Pitney Bowes Corp.,* 34 F.3d 714, 716 (8th Cir.1994) (requiring exhaustion of administrative remedies in ERISA cases where the particular plan at issue sets forth such a requirement); *Glover v. St. Louis–San Francisco Railway Co.,* 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969); *Wilczynski v. Lumbermens Mutual Cas. Co.,* 93 F.3d 397, 404 (7th Cir.1996); *Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 594 (2nd Cir.1993).

In this case, section 5.1 of UHPNE's certificate of coverage provides: "[i]f a Covered Person has a concern or question regarding the provision of Health Services or benefits under the Policy, the Covered Person should contact PLAN's Customer Service Department". Section 5 of the Plan establishes a two tiered procedure for dealing with grievances. Step one consists of an informal discussion between the subscriber and the plan administrator. If that does not resolve the matter, the subscriber is entitled to a hearing before a committee appointed by the chief executive officer of the Plan.

The Plan also requires that a subscriber exhaust those remedies before initiating a lawsuit. Thus, section 6.2 states: "[n]o legal proceeding or action may be brought without first completing the complaint procedure specified in Section 5...."

The plaintiffs argue that the exhaustion requirement contained in § 6.2 is inapplicable for three reasons. First, they contend that their claim is not one that relates to the "provision of benefits" under the Plan. Second, they assert that the exhaustion requirement was not triggered because they were not notified that the defendants were engaging in the challenged practices. Finally, the plaintiffs argue that, in any event, administrative review would have been futile.

### A. Applicability of the Exhaustion Provision

■ On its face the Plan's exhaustion requirement applies only to claims "relating" to the "provision of ... benefits" under the Plan. The plaintiffs argue that it does not apply to their claims which they describe as claims for violation of ERISA and that, even if their claims are viewed as claims for "benefits," they are not required to exhaust administrative remedies because the defendants failed to notify them that those benefits had been denied.

Determining whether a plan's exhaustion provisions are applicable to a particular claim turns not on the label attached by the claimant; but, rather, on the nature of the claim and the provisions of the plan. Thus, a plan participant cannot circumvent the plan's ex-

---

2. There is some authority for the proposition that a motion to dismiss for failure to exhaust administrative remedies also may be brought pursuant to Fed.R.Civ.P. 12(b)(6). 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1360, at 433 (2d ed.1990).

haustion requirements by characterizing a breach of contract claim as an ERISA violation. *Drinkwater,* 846 F.2d at 826.

In this case, it is clear that the *reimbursement* claim is a claim for "benefits" under the Plan. The Plan specifically provides that subscribers are entitled to refunds of co-payments exceeding 200% of the subscribers' annual premiums. Moreover, that entitlement derives solely from the contractual terms of the Plan.

It is equally clear that the plaintiffs had ample notice of the facts pertinent to their reimbursement claim. The Plan specifically describes the manner in which reimbursement is calculated and there is no allegation that the defendants withheld any material facts bearing on that calculation. Rather, the gist of the plaintiffs' reimbursement claim is that they have difficulty making the calculation. Consequently, there is no basis for the contention that lack of notice precludes application of the Plan's exhaustion requirement to the reimbursement claim.

■ Whether the *co-payment* claim is a claim for "benefits" under the Plan presents a more difficult question. *See In re Blue Cross,* 942 F.Supp. 1061, 1064 (W.D.Pa.1996) (exhaustion provision inapplicable to claim arising from failure to consider discounted rates in calculating co-payment obligation because "[p]laintiffs [did] not claim that their benefits were wrongly denied; rather, they claim[ed] that they unknowingly paid excessive amounts for medical treatment due to defendant's undisclosed conduct."). However, even if the co-payment claim is regarded as a claim for "benefits", the Plan's exhaustion requirement would not apply if, as alleged, the defendants failed to notify the plaintiffs of the discounted rates paid for medical services. Although the Plan, itself, is silent with respect to notice, ERISA, requires both written notice to subscribers whenever "benefits" are denied and the specific reasons for denial. 29 U.S.C. § 1133(1). That requirement obviously is predicated, in part, on recognition of the fact that a subscriber cannot effectively utilize administrative procedures to review a denial of benefits unless the subscriber is informed that the benefits have been denied and why. *See*

*Conley,* 34 F.3d at 717. Because the exhaustion requirement rests on the assumption that notice of denial has been provided, a fiduciary who has not provided notice that benefits have been denied is foreclosed from insisting upon exhaustion of administrative remedies. *Id.* at 717–18.

### B. *Futility of Requiring Exhaustion*

The law does not require parties to engage in meaningless acts or to needlessly squander resources as a prerequisite to commencing litigation. *Republic Industries, Inc. v. Central Pennsylvania Teamsters Pension Fund,* 693 F.2d 290, 296 (3rd Cir.1982); *DePina v. General Dynamics Corp.,* 674 F.Supp. 46, 51 (D.Mass.1987). Consequently, an ERISA plan subscriber need not exhaust the plan's administrative remedies when such action would be futile. *Wilczynski,* 93 F.3d at 404; *Kennedy,* 989 F.2d at 594 ("Where claimants make a 'clear and positive showing' that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the claimant from the requirement.").

However, a subscriber bears a heavy burden of establishing futility. Unsupported assertions are not sufficient. *Drinkwater,* 846 F.2d at 826. What is required is a "clear and positive" showing of virtual certainty that resort to administrative remedies would result in denial of the claim. *Makar,* 872 F.2d at 83.

■ Here, it is clear that no purpose would be served by requiring the plaintiffs to seek review of their *co-payment* claim by the plan administrator. It is undisputed that the challenged practice represents a long-standing policy that has been applied consistently in calculating the co-payment obligations of all Plan participants. Moreover, by vigorously defending that policy in this litigation and in similar litigation pending in other jurisdictions, the defendants have made it clear that there is virtually no possibility that they will voluntarily abandon the policy. Thus, it is inconceivable that resort to the administrative review process would result in

anything other than a denial of the plaintiffs' claim.

In contrast, no such showing has been made with respect to the *reimbursement* claim. Apart from the question of whether, under the Plan, the defendants are obliged to provide subscribers with tallies of the premiums paid by them and/or their employers, there is no indication that some mutually satisfactory accommodation could not be reached through the administrative review process. In short, the Plan's exhaustion requirement precludes consideration of the plaintiffs' reimbursement claim but not their co-payment claim.

## II. *Existence of a Case or Controversy*

█ UHC seeks dismissal of the claims against it on the ground that subject matter jurisdiction is lacking because UHC is not the Plan's administrator and, therefore, there is no case or controversy between the plaintiffs and UHC.

The plaintiffs acknowledge that UHPNE is the administrator of the Plan and that UHC has no direct contractual relationship with the plaintiffs but they contend that UHC is potentially liable because it is a "fiduciary" of the Plan, within the meaning of 29 U.S.C. § 1002(21)(A)(iii). Specifically, the plaintiffs allege that UHC exercises "discretionary authority over plan management" by negotiating with providers; granting or denying benefits; determining the amounts paid by the plan and determining the deductibles and co-insurance payments that must be made by subscribers. UHC has countered those allegations with affidavits stating, *inter alia*, that it plays no role in performing those functions and that they are performed, solely, by UHPNE.

The burden of establishing subject matter jurisdiction is on the party asserting it. *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir.1996). If the underlying factual allegations are uncontroverted, the Court "must construe the complaint liberally, treating all well pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Id.* at 1210.

Conversely, when the factual allegations on which jurisdiction is predicated are disputed, those allegations are not controlling. In such cases, the court, ordinarily, should afford the parties an opportunity to present competent evidence in the form of affidavits, depositions and the like. *Berrios v. Dept. of the Army*, 884 F.2d 28, 33 (1st Cir.1989); *see also Aversa*, 99 F.3d at 1210. Moreover, the court "has great latitude to direct limited discovery and to make such factual findings as are necessary to determine its subject matter jurisdiction." *Rivera–Flores v. Puerto Rico Telephone Co.,* 64 F.3d 742, 748 (1st Cir.1995) (citing *Land v. Dollar*, 330 U.S. 731, 735, 67 S.Ct. 1009, 1010–11, 91 L.Ed. 1209 (1947)); *see also* James W.M. Moore, et al., *Moore's Federal Practice* ¶ 12.07[2.–1].

The manner in which the determination is made is a matter of discretion and depends upon the nature of the evidence presented. If the parties' submissions reveal that there is no genuine dispute with respect to material facts, the court may make a summary judgment-like determination.

On the other hand, if fact finding is required, the court may conduct a preliminary evidentiary hearing. At such a hearing, the court may determine the facts in accordance with a preponderance of the evidence standard. Alternatively, if the jurisdictional facts are intertwined with the facts underlying the merits of the claim, the court may make a provisional determination and defer the final decision to the time of trial. *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 146–47 (1st Cir.1995) (discussing resolution of disputed facts necessary to determine existence of *personal* jurisdiction).

In this case, the plaintiffs have submitted an affidavit from Wood R. Foster, Jr., that, in essence, explains why the plaintiffs need an opportunity to conduct some discovery in order to respond to UHC's assertion that it plays no role in administration of the Plan. Because many of the pertinent facts bearing on that issue are within the defendants' exclusive control, fairness requires that the plaintiffs' request be granted.

*Conclusion*

For all of the foregoing reasons, it is hereby ORDERED that:

1. The defendants' motion to dismiss the plaintiffs' complaint for failure to exhaust administrative remedies is DENIED with respect to the co-payment claim and GRANTED with respect to the reimbursement claim.

2. The plaintiffs shall have 45 days in which to conduct discovery for the purpose of determining whether UHC performs administrative and discretionary functions with respect to the Plan that make it a "fiduciary" within the meaning of 29 U.S.C. 1002(21)(A)(iii).

3. UHC's motion to dismiss for lack of a case or controversy is DENIED WITHOUT PREJUDICE to UHC's right to renew its motion upon expiration of the aforementioned 45–day period.

IT IS SO ORDERED.