# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1748

_____

James J. Galman,                                    *
                                                    *
    Plaintiff - Appellant,                          *
                                                    *
                                                    *   Appeal from the United States
    v.                                              *   District Court for the
                                                    *   District of Minnesota.
The Prudential Insurance Company of                 *
America,                                            *
                                                    *
    Defendant - Appellee.                           *

_____

Submitted:  December 11, 2000

Filed:  June 28, 2001

_____

Before LOKEN, HEANEY, and FAGG, Circuit Judges.

_____

LOKEN, Circuit Judge.

After suffering a second heart attack on July 2, 1997, trial attorney James J. Galman applied for benefits under his law firm's Employee Long Term Disability Plan, alleging that the stress of litigation and trial work aggravated and accelerated his coronary artery heart disease, rendering him totally disabled. The Plan is funded by a group insurance contract issued by The Prudential Insurance Company of America. Prudential initially denied Galman's application in October 1997. Two weeks later, Galman invoked Prudential's internal appeals procedure, while simultaneously filing

this action for wrongful denial in state court and returning to work. Prudential removed the action to federal court under ERISA. See Lyons v. Philip Morris Inc., 225 F.3d 909, 912 (8th Cir. 2000); 29 U.S.C. § 1132(a)(1)(B). The district court[1] stayed the lawsuit while Galman exhausted his remedy under the Plan. In May 1999, Prudential denied Galman's appeal. The district court then granted summary judgment in favor of Prudential, concluding that Galman was not totally disabled as defined by the Plan because he had returned to work. Galman appeals, arguing that the district court erred in refusing to separately review Prudential's initial denial of his claim, and that his return to work was involuntary and therefore an improper basis for finding him not totally disabled. We affirm.

## I.

Galman has been a practicing trial attorney for more than thirty years. He has a history of heart problems, including heart attacks in November 1987 and July 1997 and two angioplasty procedures on October 14, 1997, two days before Prudential's initial denial of his application for long-term disability benefits. The Plan defines total disability as follows:

> "Total Disability" exists when Prudential determines that all of these conditions are met:
>
> (1) Due to Sickness or accidental Injury . . . [y]ou are not able to perform, for wage or profit, the material and substantial duties of your occupation. . . .
>
> (2) You are not working at any job for wage or profit.
>
> (3) You are under the regular care of a Doctor.

---

[1]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota.

In support of his application for benefits, Galman submitted his medical records and opinions by two treating physicians that he was totally disabled because the stress of working as a trial attorney subjected him to the "risk of aggravating or accelerating his heart condition." In reviewing the application, Prudential obtained reports from two reviewing physicians, who concluded that Galman was not totally disabled from his work as a trial attorney. Prudential's initial denial in October 1997 stated, "there is no evidence to support the hypothesis that his work as a trial attorney aggravated his preexisting coronary artery disease." Prudential denied Galman's appeal in May 1999 because "there is no documented impairment which would prevent Mr. Galman from performing the material and substantial duties of his occupation," and because he "has demonstrated the ability to continue to work in his occupation as a Trial Attorney since October, 1997."

The district court reviewed Prudential's benefits denial *de novo*, a ruling Prudential does not challenge on appeal. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Herzberger v. Standard Ins. Co., 205 F.3d 327 (7th Cir. 2000); Bounds v. Bell Atl. Enters. Flexible Long-Term Disability Plan, 32 F.3d 337, 339 (8th Cir. 1994). The district court granted Prudential's motion for summary judgment because Galman was working in May 1999 and therefore did not meet the definition of "total disability" in the Plan. Galman then filed a motion to alter or amend the judgment, arguing he was at least entitled to long-term disability benefits for the month before he returned to work on October 26, 1997. The district denied that motion because "[t]his issue was not raised in the parties' summary judgment motions." Galman challenges both rulings on appeal.

## II.

Galman first argues that the district court erred when it refused to rule on the validity of Prudential's initial benefits denial in mid-October 1997. He asserts that the initial denial compelled him to return to work to support his family and therefore, if this ruling escapes judicial review, ERISA fiduciaries will have an incentive "to initially deny claims, force employees back into the workplace, and then deny the claim again on appeal on the basis that the employee is working." Galman urges us to overturn the initial denial and conclude he was totally disabled prior to returning to work on October 26, and to award him one month's benefits, prejudgment interest, and an attorney's fee.

Framing the argument in this fashion seriously distorts the issue. ERISA provides that every plan must provide a benefits appeal procedure. See 29 U.S.C. § 1133(2). In this circuit, benefit claimants must exhaust this procedure before bringing claims for wrongful denial to court. See Kinkead v. Southwestern Bell Corp. Sickness & Acc. Disability Benefit Plan, 111 F.3d 67, 68 (8th Cir. 1997). Exhaustion serves many important purposes -- giving claims administrators an opportunity to correct errors, promoting consistent treatment of claims, providing a non-adversarial dispute resolution process, decreasing the cost and time of claims resolution, assembling a fact record that will assist the court if judicial review is necessary, and minimizing the likelihood of frivolous lawsuits. See Kinkead, 111 F.3d at 68; Conley v. Pitney Bowes, 34 F.3d 714, 718 (8th Cir. 1994). As the district court recognized, these purposes are best served if the reviewing court reviews the claims administrator's final decision to deny a claim, rather than the initial denial that was reconsidered during the internal appeal.[2]

---

[2]To promote the prompt resolution of benefit claims, the ERISA regulations require a claims administrator to resolve an appeal within 120 days. See 29 C.F.R. § 2560.503-1(h)(1)(i). Here, the 20-month delay in resolving Galman's appeal resulted

However, the fact that we review only the final claims decision does not mean that the claim for one month of benefits escapes judicial review. Rather, the problem is that Galman waived the issue. Prudential's final denial concluded that Galman was not totally disabled before and after he returned to work. In other words, the final denial affirmed the initial denial, in addition to relying on the fact that Galman had returned to work. In the district court, Galman moved for summary judgment, arguing he was entitled to long-term benefits because he was totally disabled when he filed his application and Prudential should not have considered his subsequent return to work in denying benefits. Prudential's cross motion for summary judgment argued alternative grounds -- Galman was never totally disabled, and he was working.

The district court ruled in Prudential's favor solely on the ground that Galman was not totally disabled as defined in the Plan because he was working. The court did not reach the question whether summary judgment would have been appropriate on Prudential's alternative ground, given the conflicting medical opinions as to the relationship between trial attorney stress and heart disease. Only at this point did Galman first argue, in a motion to alter or amend the judgment, that he was entitled to benefits for the one month before he returned to work, even if his return to work meant he was no longer totally disabled thereafter. The district court did not abuse its discretion in declining to reopen the case to consider this discrete new issue. "A motion to alter or amend judgment cannot be used to raise arguments which could have been raised prior to the issuance of judgment." Concordia Coll. Corp. v. W.R. Grace & Co., 999 F.2d 326, 330 (8th Cir. 1993) (quotation omitted), cert. denied, 510 U.S. 1093 (1994); accord FDIC v. World Univ. Inc., 978 F.2d 10, 16 (1st Cir. 1992) (motion to alter or amend "may not be used to argue a new legal theory").

**III.**

---

from his attempt to circumvent the appeal process by prematurely filing suit.

Galman next argues the district court erred in finding he is not totally disabled because the initial denial forced him to return to work for financial reasons. The district court concluded that Galman did not meet the definition of "total disability" in the Plan because he had been continuously working at his previous occupation from October 1997 until the court ruled in January 2000. We agree with the district court that the relevant Plan language ("You are not working at any job") is plain and unambiguous, and that unambiguous provisions in ERISA plans must be enforced in accordance with their terms. See Davolt v. Executive Comm. of O'Reilly Auto., 206 F.3d 806, 810 (8th Cir. 2000) (preexisting conditions exclusion); Wilson v. Prudential Ins. Co. of Am., 97 F.3d 1010, 1013 (8th Cir. 1996) (workplace injuries exclusion). Galman cites cases in which returning to work did not conclusively establish that the claimant was not disabled, such as Dodson v. Woodmen of the World Life Ins. Soc'y, 109 F.3d 436, 438-39 (8th Cir. 1997), and Whatley v. CNA Ins. Cos., 189 F.3d 1310, 1313-14 (11th Cir. 1999). But none of those cases refused to enforce a plan provision defining total disability to mean not working.

Galman argues that this provision is against public policy, but he cites no authority for this argument, and we reject it. Public policy does not prevent employers from declining to grant total disability benefits to employees who are willing and able to risk returning to work.

In his reply brief and at oral argument, Galman urged this court to conclude he was disabled on October 16, 1997, and to declare that he may quit his job and be automatically eligible for future total disability benefits. We decline to issue such an advisory opinion. If Galman should now stop working and file a new disability claim, that claim would turn on whether he is now totally disabled, an inquiry that would no doubt be affected by more current medical evaluations, and by the fact that he had worked for a substantial period of time after October 1997.

Finally, Galman argues the district court erred in excluding evidence that one of Prudential's reviewing physicians was biased. However, because the court conducted *de novo* review and upheld Prudential's benefits denial because Galman returned to work, this evidentiary issue had no impact on the district court's decision. Compare Union Pac. R.R. v. 174 Acres of Land, 193 F.3d 944, 948 (8th Cir. 1999).

The judgment of the district court is affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. While it is clear that an ERISA suit is premature until a claimant has exhausted available administrative appeals, I disagree with the majority's conclusion--apparently without precedent in this circuit--that the administrator's initial reason for denying benefits is irrelevant. Under the majority's analysis, the underlying medical issues of any disputed disability claim will never receive judicial scrutiny in an ERISA action to recover benefits if the policy defines disability to exclude those who are working, unless the insured has sufficient resources to forgo any income whatsoever until the claim has found its way through the administrative appeals process to the courthouse. This is particularly troubling where, as here, the claim is that the occupation itself is the source of an employee's worsening and life-threatening illness.

I agree that there are sound policy reasons for requiring a claimant to exhaust administrative appeal procedures. Those considerations, however, do not counsel that the administrator be permitted to conceal an initial medically-based decision behind the insured's subsequent return to work out of economic necessity. I would therefore remand for the district court to review Prudential's medical determination that Galman's continued work as a trial lawyer did not jeopardize his health such that he was disabled under the plan.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.