# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3792

_____

Theresa Wert,                                    *
                                                 *
        Plaintiff - Appellant,        *
                                                 *    Appeal from the United States
      v.                               *    District Court for the District of
                                                 *    Minnesota.
Liberty Life Assurance Company of                *
Boston, Inc.,                                    *
                                                 *
        Defendant - Appellee.         *


_____

Submitted: April 17, 2006
Filed: May 17, 2006

_____


Before MURPHY, MELLOY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

      This is an appeal from a grant of summary judgment in favor of a plan administrator in a denial of benefits action under ERISA. The district court held that summary judgment was appropriate because the claimant failed to exhaust available contractual remedies. The claimant appeals, arguing that notice of a contractual review procedure was insufficient and that contract language made further review

optional rather than mandatory, thus eliminating any requirement for exhaustion prior to suit. We affirm the judgment of the district court.[1]

## I.

The Andersen Corporation employed Theresa Wert as a production worker starting about January 24, 2000. She worked full-time through October 18, 2000, and worked a reduced schedule through March 10, 2001. During her period of employment, she purchased long term disability insurance coverage through the Andersen Corporation Group Long Term Disability Income Plan ("Plan") via paycheck deductions. Liberty Life Assurance Company of Boston, Inc. ("Liberty"), provided the coverage. Liberty also served as the Plan Administrator. Liberty issued Wert a certificate of coverage and a Summary Plan Description. Liberty's coverage provided for up to twenty-four months of disability payments if an insured qualified as unable to perform her "own occupation." After the initial twenty-four months of support, Liberty's coverage provided for payments until retirement age if, on an ongoing basis, an insured qualified as unable to perform "any occupation."

In September 2001, Wert filed a claim for benefits under the insurance contract. She alleged disability based on a June 2001 diagnosis of fibromyalgia. She initially sought payments alleging an inability to perform her own occupation. Liberty denied Wert's claim as untimely. In a denial letter dated November 8, 2001, Liberty provided notice of a contractual right of review, stating:

> Under the Employee Retirement Income Security Act of 1974 (ERISA), you may request a review of this denial by writing to the Liberty Life Assurance Company of Boston representative signing this letter. The written request for review must be sent within 60 days of the receipt of

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

this letter and state the reasons why you feel your claim should not have been denied.

Wert took advantage of the appeal procedure referenced in the letter and sought further review. Upon further review, Liberty reversed its initial decision and granted Wert benefits under the "own occupation" provisions of the contract.

Throughout the time Wert received benefits due to "own occupation" disability, Liberty continued to collect records regarding Wert's physical condition. In a letter dated February 19, 2004, Liberty notified Wert that she was not eligible for continuing benefits under the "any occupation" provisions of the contract. In the letter, Liberty again referenced the availability of a contractual review process using the language "you may request a review" and stating that any request for review "must be sent within 180 days of the receipt of this letter."

Although Wert had actual notice of the review procedures by virtue of her two denial letters, and although Wert acted on this notice in response to the first denial letter, she elected not to pursue review as permitted under the contract following receipt of the second letter. Instead, she instituted this action against Liberty alleging a wrongful denial of benefits under ERISA. 29 U.S.C. § 1132(a)(1)(B). In the district court, Liberty moved for summary judgment alleging that Wert failed to exhaust her contractual remedies by failing to take advantage of the review procedure provided under the contract. Wert argued that the letters described the review procedure as permissive or optional rather than mandatory, using such terms as "may request a review." Wert also noted that no language in the letters, the certificate of coverage, or the summary Plan description provided explicit notice to her stating that exhaustion of contractual review procedures was required prior to bringing suit.

The Summary Plan Description and certificate of coverage, like the letters, describe the review procedure in permissive terms. The Summary Plan Description states:

> 5. If your claim for a benefit is denied in whole or in part you must receive a written explanation of the reason for the denial. You have the right to have the Plan review and reconsider your claim. . . . 7. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court.

The certificate of coverage, in its Section 7, entitled "General Provisions," states, "When can Legal Proceedings Begin? A claimant or the claimant's authorized representative cannot begin any legal action: 1. until 60 days after Proof of claim has been given; or 2. more than three years after the time Proof of claim is required."[2]

Relying on Kinkead v. Sw. Bell Corp. Sickness and Accident Disability Benefit Plan, 111 F.3d 67 (8th Cir. 1997), the district court granted summary judgment in favor of Liberty. The district court held that the denial letters and the availability of contractual review procedures were sufficient to trigger an exhaustion requirement even though there was no express statement in the letters or Plan documents to explain that exhaustion was required. Wert appeals.

## II.

ERISA does not contain an express requirement that employees exhaust contractual remedies prior to bringing suit. Conley v. Pitney Bowes, 34 F.3d 714, 716 (8th Cir. 1994). In Kinkead, however, we recognized a judicially created exhaustion requirement under ERISA by affirming a grant of summary judgment

---

[2]On appeal, neither party cites to any Plan documents other than the certificate and Summary Plan Description, although both of these documents reference other Plan documents available for inspection.

against a claimant based on the claimant's failure to exhaust contractual remedies. 111 F.3d at 70. Wert interprets cases that preceded and followed <u>Kinkead</u> to suggest that certain plan language is needed to trigger an exhaustion requirement and that denial letters must expressly discuss exhaustion. Wert relies upon these other cases to argue that exhaustion is not required in the present case. We discuss Wert's arguments and these other cases below. For the reasons set forth in our discussion, we hold that exhaustion of contractual remedies is required in the context of a denial of benefits action under ERISA when there is available to a claimant a contractual review procedure that is in compliance with 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(f) and (g). This exhaustion requirement applies so long as the employee has notice of the procedure, even if the plan, insurance contract, and denial letters do not explicitly describe the review procedure as mandatory or as a prerequisite to suit.

## A. Cases preceding <u>Kinkead</u>

In <u>Conley</u>, a panel of our court held that exhaustion was not required where an ERISA claimant had no notice of the availability of a contractual review process. 34 F.3d at 717-18. The language of the plan at issue in <u>Conley</u> required that any "notice of denial of benefits be accompanied by explicit instructions informing the plan participant of the procedures for appeal." <u>Id.</u> at 717. We held that exhaustion was not required on the facts of <u>Conley</u> because the plan administrators failed to provide the claimant with notice as expressly required under the plan. We stated, "Requiring plan administrators to provide notice of appeals procedures as required by contract and the Secretary's regulations is not inconsistent with the goals that exhaustion typically furthers." <u>Id.</u> at 718. <u>Conley</u>, therefore, did not turn on the inadequacy of specific language in a contract or denial letter regarding the necessity of exhaustion. Rather, <u>Conley</u> turned on the failure of the plan administrator to provide notice, as required by the plan, that review was available.

In Conley, we cited our en banc opinion from Anderson v. Alpha Portland Indus., 752 F.2d 1293 (8th Cir. 1985).  Id. at 716.  Anderson presented issues distinct from those in the present case because Anderson involved the interface of ERISA and labor law.  In particular, Anderson involved ERISA claims brought by retirees under a plan negotiated under a collective bargaining agreement that covered retirees as well as current, bargaining unit employees.  Nevertheless, Anderson is instructive as to when exhaustion is required under ERISA.

We stated that the issue in Anderson was "whether retired employees of Alpha Portland Industries, Inc., must exhaust grievance procedures before making claims for insurance benefits under a plan provided for in the collective bargaining agreements in effect when they retired."  752 F.2d at 1294.  We found that the language of the plan at issue explicitly required the pursuit of internal grievance procedures by employees but did not require the pursuit of internal grievance procedures by retirees.  Id. at 1299 ("As we have discussed, the grievance procedure is not applicable to retirees.").  We also stated that a "question might be raised as to whether mandatory arbitration would meet statutory requirements as to opportunities for fiduciary review of denials of benefit claims [under 29 U.S.C. § 1133 (1982)]."  Id. at 1300.

The language of the plan at issue in Anderson described in detail how current employees were expected to deal first with their foremen, second with their plant managers, and third with the employer's manager of industrial relations.  Id. at 1295.  The grievance procedures then provided that, "If an agreement cannot be reached in this manner, the matter may by mutual agreement be submitted to arbitration in such manner as shall be acceptable to both parties.  The decision of an impartial arbitrator shall be final and binding upon both parties."  Id.  There was nothing in the opinion to suggest that some other form of internal review existed outside the multi-step grievance and arbitration procedure for current employees.  We held, first, that the union's interest in retirement benefits was not sufficient to give rise to a presumption of arbitrability regarding retirees' claims because the retirees in Anderson were a

"'functionally distinct minority' which cannot be made part of the bargaining unit and which . . . does not have a vote in union affairs." Id. at 1297-98. We held, second, that no fair reading of the contracts required retirees to "initiate the grievance procedure, let alone reach the last step of arbitration." Id. at 1300. We concluded, "the insurance plan here does not, through either express language, intent or presumption, require exhaustion of contractual remedies by retirees seeking disputed benefits." Id.

Prior to Kinkead, then, our court recognized that an exhaustion requirement is applicable to denial-of-benefits type ERISA cases but held that exhaustion was not required when notice in compliance with a plan was not provided to a claimant, as in Conley, or when the available review procedures neither complied with ERISA's fiduciary review requirements nor applied to the specific claimants, as in Anderson. In neither of these cases did we face an issue squarely on point with the present case, namely, whether the exhaustion requirement applies when there is plan language setting forth a review procedure compliant with ERISA and undisputed notice to an employee regarding the *availability* of contractual review, albeit without express language concerning the *mandatory nature* of that review as a prerequisite to suit.

## B. Kinkead

In Kinkead we faced this exact issue. We stated, "Federal courts applying ERISA have uniformly concluded that benefit claimants *must* exhaust the review procedures mandated by 29 U.S.C. § 1133(2) before bringing claims for wrongful denial to court." Kinkead, 111 F.3d at 68. The claimant in Kinkead applied for and was denied short term disability benefits. In the letter denying benefits, the administrator stated:

> You have the right to request that your claim denial be reviewed and to review pertinent documents relating to the denial. If you wish your

denial of claim for benefits to be reviewed, you or your authorized agent may submit a written request for review to [the Benefit Committee's Secretary]. A request for review must be submitted within sixty (60) days of your receipt of this letter. It is important that any additional information you would like to be considered at the time of review accompany your written request.

Id. at 69.  Like the language in the denial letters in the present case, this language describes a review procedure in permissive terms.  Nothing in this language explicitly informs a claimant of the need to exhaust prior to bringing suit in court.  It merely informs a claimant of the right to further review and the deadline for such review.  The claimant in Kinkead argued that Conley stood for the proposition that the absence of an explicit statement regarding exhaustion made notice to the claimant deficient.  We rejected that interpretation of Conley, stating:

> Kinkead argues that she was entitled to a clear statement that she must exhaust this review procedure. But neither the statute, the Department's regulations, nor any prior case imposes such a notice requirement. Given the practical reasons favoring exhaustion, claimants with notice of an available review procedure should know that they must take advantage of that procedure if they wish to bring wrongful benefit denial claims to court.

Id.

On appeal, the claimant in Kinkead also argued that plan language concerning the availability of review "create[d] an optional review procedure, not a procedure that claimants must exhaust."  Id.  The claimant had not raised the specific issue of insufficient plan language in the district court, and we stated that the issue was not properly preserved.  Id.  Speaking more generally, however, we went on to state that a "plan claim review procedure that meets the requirements of 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(f) and (g) will trigger the judicially imposed duty to exhaust that remedy."  Id. at 70.  We also distinguished Conley in a footnote, stating that the

-8-

parties in Conley conceded the existence of a contractual duty to exhaust. Id. at n.3. We characterized Conley as dealing solely with the issue of "whether the duty should be imposed on a claimant who had no notice or knowledge of the plan's claim review procedure." Id. Ultimately, based on our general statement about an ERISA-compliant review procedure and our distinguishing of Conley, we held in Kinkead that notice was sufficient and the claimant's failure to exhaust required summary judgment in favor of the defendant. Id.

## C.  Cases after Kinkead

Cases since Kinkead have consistently imposed an exhaustion requirement where there is notice and where there is no showing that exhaustion would be futile. See, e.g., Back v. Danka Corp., 355 F.3d 790, 792 (8th Cir. 2003) (exhaustion not required where plan failed to notify plaintiff regarding availability of internal remedy); Galman v. Prudential Life Ins. Co. of Am., 254 F.3d 768, 770 (8th Cir. 2001) ("ERISA provides that every plan must provide a benefits appeal procedure. In this circuit, benefit claimants must exhaust this procedure before bringing claims for wrongful denial to court."); Burds v. Union Pac. Corp., 223 F.3d 814, 817 (8th Cir. 2000) (exhaustion required where court determined that exhaustion was "clearly required under the plans at issue"); Schleeper v. Purina Benefits Ass'n, 170 F.3d 1157, 1157 (8th Cir. 1999) (per curiam) (affirming dismissal for failure to exhaust and rejecting claimant's argument that exhaustion would have been futile); Union Pac. R.R. Co. v. Beckham, 138 F.3d 325, 332 & n.4 (8th Cir. 1998) (recognizing the futility exception to the exhaustion requirement under ERISA in the context of determining when a cause of action accrued).  In no case has our court excused a failure to exhaust contractual remedies based on the fact that plan language described a review procedure as permissive rather than mandatory.  We have, however, repeatedly stated that we impose an exhaustion requirement as a prerequisite to suit when exhaustion is "required" or "clearly required" under an ERISA plan. Burds, 223 F.3d at 817 ("It is well-established that when exhaustion is clearly required under the

terms of an ERISA benefits plan, the plan beneficiary's failure to exhaust her administrative remedies bars her from asserting any unexhausted claims in federal court."); Layes v. Mead Corp., 132 F.3d 1246, 1252 (8th Cir. 1998) ("Where a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, his claim for relief is barred.") (citing Conley, 34 F.3d at 716 ("We have required exhaustion in ERISA cases only when it was required by the particular plan involved.")).

Importantly, the quoted passages from Burds, Layes, and Conley, do not represent holdings from our court. As explained above, Conley involved an absence of notice regarding the availability of a review process, not the failure of plan language to describe the mandatory or permissive nature of that process. Also, in Layes and Burds we did not excuse a failure to exhaust based on the fact that a plan described a review procedure in permissive rather than mandatory terms. In Layes, the plaintiff lost on summary judgment due to his failure to apply for salary continuation benefits in a timely manner, not due to his failure to exhaust a contractual review procedure. In Burds, we held that exhaustion was required under the applicable plan. In no opinion has our court given consequence to the phrases "required" or "clearly required" to excuse a failure to exhaust.

### D. Wert's argument

Wert's argument is twofold. She argues first that the denial letters failed to provide explicit notice of an exhaustion requirement. Second, she argues that the plan language establishes an optional review procedure that need not be exhausted prior to suit. Kinkead directly forecloses her argument related to the denial letters. Kinkead squarely addressed and rejected the argument that a denial of benefits letter must expressly set forth and explain an exhaustion requirement—notice of the availability of review is sufficient. Kinkead, 111 F.3d at 69.

Regarding the sufficiency of plan language, it is at least arguable that Kinkead's discussion of plan language was dicta. Nevertheless, we believe that the rationale behind the exhaustion requirement as set forth in Kinkead teaches that we should require exhaustion on the facts of the present case. The rationale stems from the sound policy of not wanting courts to review plan administrators' decisions based on initial, often succinct denial letters in the absence of complete records. Id. This is important because, in many cases, review is for "abuse of discretion on the record considered by the plan decision-maker," id. at 68, and through the review process the parties aid the court by "assembling a fact record that will assist the court if judicial review is necessary, and minimizing the likelihood of frivolous lawsuits." Galman, 254 F.3d at 770-71. Further, "[e]xhaustion serves many important purposes—giving claims administrators an opportunity to correct errors, promoting consistent treatment of claims, providing a non-adversarial dispute resolution process, [and] decreasing the cost and time of claims resolution . . . ." Id.

We applied these rationales in Kinkead when faced with a challenge to the sufficiency of notice provided by a denial letter. We find no compelling basis to distinguish between our application of these rationales in the context of denial letters and plan documents. Accordingly, whether it is a denial letter or a plan document that uses permissive language to describe a review procedure, "claimants with notice of an available review procedure should know that they must take advantage of that procedure if they wish to bring wrongful benefit denial claims to court." Kinkead, 111 F.3d at 69.

The judgment of the district court is affirmed.

_____